# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE D GODFREY, No. B32997,  Plaintiff, | |
| vs. | Case No. 16−cv–496-SMY |
| BRYAN EASTON, TYLER JAIMET, PAMELA SCOTT, LACY REAMS, RICHARD HARRIS, BRUCE GUTREUTER, KIMBERLY BUTLER, and DEBBIE KNAUER,  Defendants. | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Terrance D. Godfrey, an inmate at Pontiac Correctional Center ("Pontiac"), brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights that allegedly occurred when he was housed at Menard Correctional Center ("Menard"). Specifically, Plaintiff alleges that guards at Menard beat him in violation of his civil rights.

On August 16, 2016, the Court dismissed this action with prejudice for Plaintiff's failure to comply with an Order of the Court. (Doc. 14). Judgment was entered the same day. (Doc. 15). The Seventh Circuit Court of Appeals subsequently vacated the Court's judgment of dismissal and remanded the case for further proceedings. (Doc. 39-1).

The case is now before the Court for a preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

(b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff's Complaint contains the following allegations:

**Attempted Escape and Excessive Force**

On April 25, 2015, Plaintiff was transferred from Menard to Chester Memorial Hospital for medical treatment due to an apparent seizure. (Doc. 1, p. 8). Correctional officers Easton and Jaimet were supervising Plaintiff while he was receiving medical treatment. (Doc. 1, pp. 8-9). Jaimet left Plaintiff's hospital room and asked nursing staff to bring Plaintiff something to eat. *Id.* Easton remained in Plaintiff's hospital room and Plaintiff observed that Easton appeared

agitated. *Id.* Easton commented that he was tired of "babysitting" Plaintiff, wanted to return to Menard and made derogatory statements about Menard's warden and other prison officials. (Doc. 1, p. 9).

Plaintiff's hospital room had an adjoining bathroom that attached to a second hospital room. At some point, Plaintiff asked to use the bathroom. (Doc. 1, pp. 9-10). Easton loosened Plaintiff's hand and ankle restraints, allowed Plaintiff to enter the bathroom and closed the bathroom door. (Doc. 1, p. 10). After the door closed, Plaintiff attempted to escape by climbing out of a window in the adjoining hospital room. *Id.*

Jaimet and Easton caught Plaintiff attempting to escape and a struggle ensued. *Id.* While Plaintiff was hanging from the hospital window, Easton grabbed his right arm from inside the adjoining hospital room. *Id.* Plaintiff was then sprayed with pepper spray. *Id.* At some point, Jaimet exited the hospital and with the help of a hospital employee, pulled Plaintiff from the window and placed him on the ground. *Id.*[1]

Despite reports to the contrary, Plaintiff was not returned to the hospital. *Id.* Instead, he was placed in the back of a police vehicle and returned to Menard. *Id.* While Plaintiff was in the vehicle, Sergeant Harris and Lieutenant Gutreuter took turns beating, punching and twisting Plaintiff's genitals. (Doc. 1, pp. 10-11). Plaintiff sustained multiple injuries to his face, wrists, ribs and legs. *Id.*

Upon Plaintiff's return to Menard, Lieutenant Gutreuter and Sergeant Harris continued to assault him – dragging him through the parking lot by his restraints and spraying him in the face with mace. *Id.* Plaintiff was then restrained in a holding cell with his hands cuffed behind his back. (Doc. 1, p. 12). Plaintiff's eyes and face were burning and he had blood running down his

---

[1] *See also* Doc. 1, pp. 29-30 (Adjustment Committee Summary Report, finding Plaintiff guilty of several charges associated with the attempted escape); Doc. 1-3, pp. 14-19 (case summary).

face and body. *Id.* Plaintiff remained in the cell, restrained and injured, for between six and seven hours. *Id.* During this time, Plaintiff did not receive any medical attention. *Id.*

Eventually, Plaintiff was transferred to Pontiac Correctional Center. (Doc. 1, p. 12). He received "little" medical treatment from medical staff at Pontiac. *Id.* He indicates that he received pain medication and that x-rays revealed injuries to both of his wrists. *Id.*

In addition to the specific allegations described above, Plaintiff alleges that Jaimet and Easton violated IDOC rules and/or policies and attempted to cover-up those violations. (Doc. 1-1, p. 1).

Officials at IDOC investigated the attempted escape and issued an investigative report ("Report"). (Doc. 1-3). The investigators concluded that the allegation Plaintiff violated "Departmental Rules related to #102 Assaulting Any Person, #105 Dangerous Disturbance, #106 Escape or Runaway, #202 Damage or Misuse of Property, #307 Unauthorized Movement, #403 Disobeying a Direct Order and #501 Violating State or Federal Laws [was] substantiated." The investigators further concluded that the allegation Plaintiff "violated the criminal offenses of Attempted Escape and Aggravated Battery is substantiated." (Doc. 1-3, pp. 1, 13-14).

The report also concluded that various allegations and charges were substantiated as to Correctional Officers Easton and Jaimet. (Doc. 1-3, pp. 1, 13-14). Both defendants allegedly violated directives related to offender management, movement and security restraints. Additionally, charges pertaining to providing false information, falsifying documents and negligence were substantiated. *Id.* The report was forwarded to the Randolph County States Attorney for a decision on prosecution. (Doc. 1-3, pp. 1, 12-14).

4

**Posting Nude Photos of Plaintiff on the Internet**

Plaintiff alleges that Sergeant Pamela Scott and Correctional Officer Lacy Reams were involved in posting a nude photo of him on a Facebook page. (Doc. 1-2, p. 1). The Complaint suggests that Scott and Reams were involved in posting the photo and/or commented on the photo by "liking" it. *Id.* The Complaint and attached exhibits suggest that this incident occurred shortly after and was possibly connected to the attempted escape. (Doc. 1, 1-2, p. 1, 1-3, pp. 1-15).

This incident was investigated in conjunction with the attempted escape and included in the investigation report. (Doc. 1-3, p. 1). According to the report: (1) Scott admitted to accessing "the picture from a Menard Web group and repost[ing] it on Facebook" and (2) Reams admitted to commenting on the post by "liking" it. *Id.* Both defendants denied responsibility for taking the picture in the first instance. (Doc. 1-3, pp. 1, 9, 11). Officials concluded that Scott "violated Institutional Directives related to Conduct of Individual specifically Conduct while Exercising Official Duties and Responsibilities is substantiated." (Doc. 1-3, p. 1).

**Grievances**

Lastly, Plaintiff alleges that Warden Butler and Administrative Official Knauer failed to investigate, denied and/or mishandled his grievances. (Doc. 1, pp. 13-14; Doc. 1-1, pp. 2-3).

## Discussion

Based on the allegations of the Second Amended Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to divide the *pro se* action into the following counts. Any other claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.

| | |
|---|---|
| **Count 1** – | On April 25, 2015, Lieutenant Gutreuter and Sergeant Harris subjected Plaintiff to excessive force in violation of the Eighth Amendment. |
| **Count 2** – | On April 25, 2015, Lieutenant Gutreuter and Sergeant Harris showed deliberate indifference to Plaintiff's serious medical needs resulting from the alleged excessive force, in violation of the Eighth Amendment. |
| **Count 3** – | Eighth Amendment claim against Sergeant Scott and Correctional Officer Reams for their conduct in connection with posting a nude photo of Plaintiff online and/or commenting on the same. |
| **Count 4** – | Claim against Warden Butler and Administrative Official Knauer for failing to investigate, denying and/or mishandling grievances. |
| **Count 5** – | Claim against Correctional Officers Easton and Jaimet for attempting to cover-up their violation of IDOC rules and policies. |

**Count 1**

Plaintiff claims that he was subjected to excessive force by Lieutenant Gutreuter and Sergeant Harris. The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.' " *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is

whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

At this early stage, Plaintiff has pleaded a viable excessive force claim against Lieutenant Gutreuter and Sergeant Harris. Accordingly, Count 1 shall receive further review.

## Count 2

Plaintiff also claims that Lieutenant Gutreuter and Sergeant Harris were deliberately indifferent to his serious medical needs that arose from the alleged excessive force. The Eighth Amendment protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To state a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

A corrections officer who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). Here, Plaintiff alleges that, after the assault, Lieutenant Gutreuter and Sergeant Harris placed him in restraints and left him in a holding cell, without medical treatment, for between six and seven hours. These allegations are sufficient to state a deliberate indifference claim. Therefore, Count 2 shall receive further review.

## Count 3

Plaintiff will also be allowed to pursue his Eighth Amendment claim against Sergeant Scott and Correctional Officer Reams for their conduct in connection with posting a nude photo of Plaintiff online and/or commenting on the same. Count 3 is akin to a claim of forced public nudity. Such claims are evaluated under the same standard as claims of humiliating strip searches. *See Barrows v. Blackwell*, No. 13-cv-1483, 2016 WL 1122838, at *6 n. 2 (C.D. Ill. March 22, 2016)(citing *Rivera v. Jimenez*, No. 12-cv-476, 2013 WL 6440978, at *5-6 (W.D. Wis. Dec. 9, 2013), aff'd 556 F. App'x. 505 (7th Cir. 2014)).

An inmate states such a claim under the Eighth Amendment "when he plausibly alleges that the [incident] in question was motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order or security in [the] prison[ ]." *See King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015). In both contexts, the Eighth Amendment protects against "calculated harassment unrelated to prison needs." *Meriwether v. Faulkner*, 821 F.2d 408, 418 (7th Cir. 1987); *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Even when prison authorities can identify a valid correctional justification for their actions, the conduct "may still violate the Eighth Amendment if 'conducted in a harassing manner intended to humiliate and cause psychological pain.' " *King*, 781 F.3d at 897 (citing *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)).

At this stage of the litigation, Defendants' conduct – posting a nude photo of Plaintiff on the internet and/or commenting on the same – is indicative of calculated harassment unrelated to prison needs. Read liberally, the Complaint also suggests that Defendants actions were intended to humiliate and cause psychological pain. Accordingly, Count 3 shall receive further review.

8

**Count 4**

Plaintiff alleges that Warden Butler and Administrative Official Knauer violated his rights by failing to investigate and denying and/or mishandling grievances. But Defendants had no duty under the Constitution to investigate or even to respond to Plaintiff's grievances. "[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause." *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Mause v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Likewise, prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001).

Accordingly, Count 4 will be dismissed without prejudice for failure to state a claim upon which relief can be granted. As this is the only claim directed against Warden Butler and Administrative Official Knauer, these individuals shall be dismissed from the action without prejudice.

**Count 5**

Plaintiff asserts that Correctional Officers Easton and Jaimet violated his constitutional rights by attempting to conceal their own misconduct – their alleged violations of IDOC rules and/or policies. Defendants' alleged failure to follow IDOC rules and/or policies does not, in and of itself, violate the Constitution. *Mause v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Further, there is no indication that any attempts by Easton or Jaimet to conceal policy violations otherwise violated Plaintiff's constitutional rights. As such, Count 5 will be dismissed without prejudice for failure to state a claim upon which relief can be granted. As this is the only claim

directed against Easton and Jaimet, these individuals shall be dismissed from the action without prejudice.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNT 1** shall receive further review as to **GUTREUTER** and **HARRIS**.

**IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review as to **GUTREUTER** and **HARRIS**.

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review as to **SCOTT** and **REAMS**.

**IT IS FURTHER ORDERED** that **COUNTS 4** and **5** are **DISMISSED** without prejudice for failure to state a claim upon which relief can be granted**.** In connection with this dismissal, **EASTON, JAIMET, BUTLER** and **KNAUER** are **DISMISSED** from the action without prejudice for failure to state a claim upon which relief can be granted. The Clerk of the Court is **DIRECTED** to terminate these individuals as parties in CM/ECF.

**IT IS FURTHER ORDERED** that, as to Counts 1, 2 and 3, the Clerk of Court shall prepare for **GUTREUTER, HARRIS, SCOTT** and **REAMS**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Reona J. Daly** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Daly** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

    **IT IS SO ORDERED.**

    **DATED: January 2, 2018**

    **s/ STACI M. YANDLE**
    **Staci M. Yandle**
    **United States District Judge**