IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TERRANCE D. GODFREY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 16–cv-496-SMY |
| | ) |
| | ) |
| BRYAN EASTON, et al., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Terrance D. Godfrey, an inmate at Lansing Correctional Center, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 claiming deprivations of his constitutional rights that allegedly occurred when he was housed at Menard Correctional Center. He is proceeding on the following claims:

Count One: Defendants Richard Harris and Bruce Gutreuter were deliberately indifferent to Godfrey's medical needs by failing to provide adequate medical treatment;

Count Two: Defendants Harris and Gutreuter used excessive force against Godfrey in violation of the Eighth Amendment;

Count Three: Defendants Lacy Reams and Pamela Scott violated Godfrey's rights under the Fourth, Eighth and Fourteenth Amendments through the publication of a nude photograph;

Count Four: Defendants Reams and Scott violated Godfrey's right of seclusion by posting and sharing a nude photograph of Godfrey on Facebook;

Count Five: Defendants Reams, Scott, Harris and Gutreuter intentionally inflicted emotional distress on Godfrey through their various acts.

This case is now before the Court on the Motion for Summary Judgment filed by Defendants Pamela Scott, Lacy Reams, Richard Harris, and Bruce Gutreuter (Doc. 162) and Godfrey's Motion for Partial Summary Judgment against Defendants Pamela Scott and Lacy Reams (Doc. 169). The parties

filed respective responses (Docs. 173, 175). For the following reasons, Defendants' Motion is **GRANTED in part** and **DENIED in part** and Plaintiff's Motion is **DENIED**.

## Factual Background

The following relevant facts are undisputed unless otherwise noted: On April 25, 2015, Terrance Godfrey had a seizure while he was incarcerated at Menard Correctional Center and was transported to Chester Memorial Hospital (Doc. 163-8, pp. 31-34, 37-38). Correctional officers Bryan Easton and Tyler Jaimet were assigned to monitor Godfrey. Upon waking up in the hospital, Godfrey asked Easton if he could use the bathroom. *Id*. at p. 55. The bathroom was located between two patient rooms (Doc. 163-2, pp. 21-22). Easton removed Godfrey's restraints, walked him to the bathroom, and assisted him on to the toilet. *Id*. at p. 56, 61. Godfrey was wearing a hospital gown and socks, no undergarments, and had an IV and cardiac monitor. *Id*. at pp. 56-60. He removed the cardiac monitor and IV while in the bathroom. *Id*. at pp. 64-65. Godfrey then went to the adjoining patient room and attempted to escape out of the window. *Id*. at pp. 65-67. Godfrey did not recall what parts of his body were outside the window when Easton and Jaimet came into the room (Doc. 163-1, p. 68). Easton grabbed Godfrey's arm and attempted to stop him from going out the window while Jaimet ran outside (Docs. 163-1, p. 68; 163-2, pp. 28-29). Godfrey struggled with the correctional officers and was directed to stop struggling. *Id*. Jaimet administered a one-second burst of OC spray aimed at Godfrey's nose and mouth area after Godfrey continued to struggle (Doc. 163-1, pp. 77-78; 163-2, pp. 29-30). Easton and Jaimet, with the assistance of local law enforcement and a hospital employee, restrained Godfrey outside of the hospital (Doc. 163-3, pp. 26-27). At some point during the attempted escape, Godfrey's hospital gown came loose but was still tied around his neck (Doc. 163-1, pp. 156-157). Once he was secured, the Officers helped Godfrey put the gown back over his body (Doc. 163-2). Three correctional officers escorted Godfrey back to Menard. Godfrey sat in the back seat between Defendants Sergeant Richard Harris and Lieutenant Bruce Gutreuter, who he identified as "Harris" and "Bruce" (Doc. 163-1, pp. 83-86).

According to Godfrey, Harris and Gutreuter continually beat him during the 4-5minute car ride – punching him in the ribs, shoulder, and grabbing his groin (Doc. 163-1, p. 144; 163-4, pp. 40-41; *see also* p. 94). At Menard, Harris and Gutreuter placed Godfrey in a holding cage in the North 2 non-contact visiting room as he awaited his transfer to Pontiac Correctional Center. *Id*. at p. 46. Godfrey was scared and panicking (Doc 163-1, p. 149). His wrists were swollen and bleeding, his right leg had a gash about the size of a pencil, and his eye was swollen and bleeding. Doc. 163-1, p. 149.

Registered nurse Rebecca Stefani completed a Health Status Summary as part of the transfer process. She testified as follows: she saw Godfrey in the North 2 holding cell at 8:10 PM before he left for Pontiac Correctional Center (Doc. 163-9, pp. 98-104). Godfrey complained of cuts on his wrists and a lump on his head. *Id.* at pp. 63-65. Godfrey did not report any other injuries to Stefani nor did Stefani observe any injuries. *Id*. at p. 65. Stefani took his vital signs, examined and cleaned his wrist lacerations, and did a brief neurologic exam. *Id*. at pp. 114-116.

Godfrey's medical records indicate that he was evaluated by a nurse at 1:10 AM on April 26, 2015 after arriving at Pontiac (Doc. 163-11, pp. 39-43; 163-14, pp. 774-776). Dr. Andrew Tilden examined Godfrey in the infirmary at Pontiac on April 27, 2015 (Doc. 163-12, pp. 19-28; 163-14, p. 784). Dr. Tilden documented that Godfrey's subjective complaints were swelling of his left wrist due to pulling his wrists by cuffs. *Id*. Objectively, he noted that Godfrey was blind in his left eye and that he had superficial skin abrasions of his left leg, shoulder, and hands. *Id*.

Dr. Tilden saw Godfrey again on April 28, 2015 and documented that he complained of stomach pain. *Id*. He found that Godfrey had left eye blindness, no swelling of his extremities and documented his medical history of seizures. *Id*. Godfrey did not have swelling to his head or bruising or swelling to his left eye (Doc. 163-12, p. 44). Dr. Tilden testified as follows: He examined Godfrey's left eye and noted that he had no reflexes which indicated severe cataract or blindness, due to an old, probably, childhood trauma. *Id.* at pp. 45-46. Godfrey reported that he sustained an injury to his left eye in a car accident when he was 17 or 18 years old (Doc. 163-1, pp. 28-29). He had numerous

surgeries on his left eye following the accident. *Id*. at pp. 31-33. Godfrey told Dr. Tilden that he had no vision in his left eye. *Id*. at p. 46. Dr. Tilden did not make an optometry referral for Godfrey after examining him on April 27 and April 28, 2015 because Godfrey's blindness was old and there was no immediate need for an optometrist to examine him. *Id*. at pp. 52-53.

On December 21, 2016, Godfrey was referred to the Gailey Eye Clinic in Bloomington, IL for evaluation of a retinal detachment with blood in the anterior chamber of his left eye (Doc. 163-13, pp. 87-97). The clinic subsequently recommended that Godfrey undergo removal of his left eye due to pain and blood in the anterior chamber (Doc. 163-14, pp. 314-318). Godfrey testified that the April 25, 2015 use of pepper spray and the beating caused further damage to his eye leading to the eventual removal (Doc. 163-1, pp. 149-150).

### *Photograph*

Correctional officer Lacy Reams was on her way home from work on April 25, 2015. As she drove down the road that passes Chester Memorial Hospital, she saw Godfrey in the hospital yard being tackled by Chester Police Officers (Doc. 163-7, pp. 16-19). Godfrey had a hospital gown on and was "half naked". *Id*. at p. 24. At the time, Reams did not know it was Godfrey or that he was an inmate. *Id*. at pp. 18, 23. She does not recall seeing correctional officers at the scene when she drove by. She did not slow down or stop her car to further observe the scene. *Id*. at pp. 21-22. About an hour later, Reams called fellow correctional officer Pamela Scott and told her what she had just witnessed. *Id*. at pp. 22-25; *see also* Doc. 163-6, pp. 37-39.

Later that same day, Scott saw a photograph on the Menard Facebook page of the incident Reams had told her about (Doc. 163-6, pp. 38-39). The photograph was small and blurry, and Scott did not know there was any nudity shown. *Id*. at pp. 39-40. Scott shared the photograph with her Facebook friends and tagged Reams in the photograph because of their conversation about it. *Id*. at pp. 34-37. At the time she shared the photograph, Scott did not know it was Godfrey or that he was an inmate. *Id*. at pp. 42-43. Scott removed the photograph from her Facebook page the same day after

another correctional officer informed her it was a photograph of an inmate making an escape attempt. *Id*. at pp. 46-49. Reams never saw the photograph on Facebook (Doc. 163-7, p. 27). Neither Reams nor Scott posted the photograph to the Menard Facebook page nor do they know who took or posted the photograph (Doc. 163-6. at pp. 34, 39, 62-63; Doc. 163-7, at pp. 28, 34).

## Discussion

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). Any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir. 2004). Rather, the Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483.

### Excessive Force (Count 2)

The intentional use of excessive force by prison guards against a prison inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34 (2010). To succeed on an excessive force claim, a plaintiff must show that an assault occurred, and that "it was carried out maliciously and sadistically rather than as part of a good-faith effort to maintain or restore discipline." *Id.* at 40 (*citing Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate plaintiff need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 37-38; *see also Dewalt v. Carter*, 224. F.3d 607,

620 (7th Cir. 2000). Groping, fondling or other unwelcome touching of private areas without legitimate penological justification is that sort of repugnant and offensive force. *See*, *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012).

With respect to the August 25, 2015 incident, Godfrey testified that he was restrained in the backseat of the vehicle while Defendants Gutreuter and Harris continually punched him in the ribs and face and grabbed his groin – actions that do not constitute *de minimis* force. Defendants' denial of Godfrey's recitation of the event creates a material issue of fact as to what occurred in the vehicle; an issue that must be resolved by the fact-finder. Accordingly, summary judgment is inappropriate.

### Deliberate Indifference (Count 1)

Godfrey claims that Lieutenant Gutreuter and Sergeant Harris were deliberately indifferent to his serious medical needs that arose from the alleged excessive force. Deliberate indifference to serious medical needs of prisoners may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (per curiam). To prevail on such a claim, an inmate must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

A corrections officer who uses excessive force on a prisoner has "a duty of prompt attention to any medical need to which the beating might give rise[.]" Cooper *v. Casey*, 97 F.3d 914, 917 (7th Cir. 1996). According to Godfrey, after the assault, Lieutenant Gutreuter and Sergeant Harris placed him in restraints and left him in a holding cell. And although he made a request, he was not provided medical treatment for the assault nor taken to the eye wash station to rinse the pepper spray from his eyes. He claims that he was in immense pain from the beating and the pepper spray. Drawing all inferences in Godfrey's favor, the failure to provide medical treatment following the alleged assault could constitute deliberate indifference. Accordingly, summary is denied as to this claim.

**Publication (Count 3)**

Godfrey asserts that Defendants Ream and Scott violated his rights under the Fourth and Eighth Amendments when they posted and shared the photograph of him on Facebook. As an initial matter, Godfrey's public nudity claim against Reams and Scott does not implicate the Fourth Amendment. Inmates have only a limited right to privacy under the Fourth Amendment. *See Hudson v. Palmer*, 468 U.S. 517 (1984). Specifically, the Fourth Amendment protects, to some degree, prisoners' bodily integrity against unreasonable intrusions *into* their bodies. *Peckham v. Wisconsin Dep't of Corrections*, 141 F.3d 694, 699 (7th Cir.1998) (Easterbrook, J., concurring in judgment) (emphasis added). But it does not protect them from visual inspections of appearance of their bodies. *Id.*; see also *King v. McCarty,* 781 F.3d 889, 900 (7th Cir. 2015), *overruled by Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020). Because the photograph of Godfrey – a visual image of Godfrey half naked – does not constitute a reasonable intrusion into his body under the Fourth Amendment, Reams and Scott are entitled to summary judgment on Godfrey's Fourth Amendment claim.

Godfrey's Eighth Amendment claim is akin to a claim of forced public nudity. Such claims are evaluated under the same standard as claims of humiliating strip searches. *See Mitchell v. Pace*, No. 16-CV-00485-JPG, 2016 WL 3087454, at *1 (S.D. Ill. June 2, 2016); *Rivera v. Jimenez*, No. 12-cv-476, 2013 WL 6440978, at *5-6 (W.D. Wis. Dec. 9, 2013), *aff'd* 556 Fed.Appx. 505 (7th Cir. 2014)). That is, forced public nudity violates the Eighth Amendment when "motivated by a desire to harass or humiliate rather than by a legitimate justification, such as the need for order and security in prisons." *King v. McCarty*, 781 F.3d 889, 897 (7th Cir. 2015), *rev'd on other grounds, Henry v. Hulett*, 969 F.3d 769 (7th Cir. 2020). The defendants' subjective purposes and states of mind are relevant considerations. *Id.* at p. 899.

Godfrey has no knowledge of who took the photograph. Other than his own suppositions, he has produced no evidence that Ream or Scott took or posted the photograph of him to Facebook. And although Scott copied the photograph from the Menard page to her personal Facebook page and tagged

Reams, there is no evidence that Scott was motivated by a desire to harass or humiliate Godfrey. Scott testified that she did not know it was a photograph of an inmate – let alone Godfrey – when she tagged Ream in the photograph. Once she learned that the photograph depicted an inmate, she removed it from her Facebook page. Similarly, Ream testified that she did not know the man she observed outside of the hospital was Godfrey until she was later informed. On these facts, Defendants Ream and Scott are entitled to summary judgment as to Godfrey's Eighth Amendment publication claim.

### Intrusion Upon the Seclusion of Another (Count 4)

Illinois follows the Restatement (Second) of Torts which defines invasion of privacy by intrusion upon seclusion as follows:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.

*Busse v. Motorola, Inc.,* 813 N.E.2d 1013, 1017 (Ill. App. Ct. 2004) (citing Restatement (Second) of Torts § 652B, at 278 (1977)). A successful claim for the tort of invasion of privacy by intrusion upon seclusion requires proof of the following four elements: "(1) an unauthorized intrusion or prying into the plaintiff's seclusion; (2) an intrusion that is offensive or objectionable to a reasonable person; (3) the matter upon which the intrusion occurs is private; and (4) the intrusion causes anguish and suffering." *Johnson v. K-mart Corp.,* 723 N.E.2d 1192, 1196 (Ill. App. Ct. 2000).

Here, the undisputed evidence in the record establishes that the photograph was taken at some point after Godfrey attempted to escape out of a hospital window wearing only a hospital gown and socks. Godfrey's appearance on the hospital grounds occurred in broad daylight and was visible to anyone on the public hospital grounds. Again, there is no evidence that either Reams or Scott took the photograph that was posted to Facebook.

Even viewing the facts and all reasonable inferences in Godfrey's favor, there is no genuine dispute as to any material fact regarding the first and third elements of the common law intrusion upon seclusion claim. Defendants Reams and Scott are therefore entitled to summary judgment.

### Intentional Infliction of Emotional Distress (Count 5)

Under Illinois law, a plaintiff must establish the following elements to succeed on an intentional infliction of emotional distress claim: (1) that the defendants' conduct was extreme and outrageous; (2) that Defendants intended their conduct to inflict severe emotional distress or knew there was at least a high probability their conduct would inflict such distress; and (3) that their conduct actually caused severe or extreme emotional distress. *Lopez v. City of Chicago*, 464 F.3d 711, 720 (7th Cir. 2006). Extreme and outrageous conduct is that which goes "beyond all bounds of decency and [is] considered intolerable in a civilized community." *Id.* (citations omitted).

If Godfrey's testimony regarding the beating is credited, a jury could find that the use of excessive force and failure to provide medical attention were extreme and outrageous behavior. Thus, Godfrey's intentional infliction of emotional distress claims against Gutreuter and Harris survive summary judgment. However, as the Court has concluded that there is insufficient evidence establishing that Defendants Reams and Scott violated Godfrey's constitutional or state law rights, the record does not support a finding of intentional infliction of emotional distress. Accordingly, Reams and Scott are entitled to summary judgment on Godfrey's intentional infliction of emotional distress claim.

### Qualified Immunity

Finally, Defendants argue they are entitled to qualified immunity. Governmental officials are protected from civil liability when performing discretionary functions under the doctrine of qualified immunity so long as "their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001). For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

The record contains facts from which a jury could conclude that Gutreuter and Harris violated Godfrey's constitutional rights by using excessive and unreasonable force. And, at the time in question, the unconstitutionality of the use of improper force in this context was clearly established and should have been known to Defendants. *See Thomas v. Stalter*, 20 F.3d 298 (7th Cir. 1994) (where an officer punched an inmate in the face while he was restrained causing pain and exacerbation of a dental condition). As such, Gutreuter and Harris are not entitled to qualified immunity.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 162) is **GRANTED in part** and **DENIED in part**. Plaintiff's Motion for Summary Judgment (Doc. 169) is **DENIED**. Plaintiff's claims against Defendants Gutreuter and Harris (Counts 1, 2, and 5) will proceed to trial. Plaintiff's claims against Defendants Reams and Scott (Counts 3 and 4) are **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly at the close of the case. This case will be set for a status conference by separate order.

**IT IS SO ORDERED.**

**DATED: September 7, 2021**

**STACI M. YANDLE**
United States District Judge